IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| M.P. TULSA, LLC, | : |
| | : |
|    Plaintiff, | : |
| | : |
| v. | :  CIVIL ACTION NO. |
| | :  1:15-CV-04440-RWS |
| SH CCRC, LLC, SOVRAN | : |
| MANAGEMENT CO., LLC, AND | : |
| GEORGE P. WAGNER, III, | : |
| | : |
|    Defendants. | : |

## ORDER

This case comes before the Court on: (1) the Motion to Dismiss or Transfer Venue [Doc. No. 3] filed by Defendants SH CCRC, LLC ("SH CCRC") and George P. Wagner, III; and (2) the Motion to Dismiss or Transfer Venue [Doc. No. 4] filed by Defendant Sovran Management Co., LLC ("Sovran"). After reviewing the record, the Court enters the following order.

**I.    Background**[1]

This action arises out of a contract entered into between Plaintiff M.P.

---

[1] As the case is before the Court on a Motion to Dismiss, the Court accepts as true the facts alleged in the complaint. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted).

Tulsa, LLC ("MP Tulsa") and Defendant SH CCRC through its owner and Chief Executive Officer, Defendant Wagner. The contract provided for the sale and operational takeover of the Southern Hills Nursing and Rehabilitation Center ("Southern Hills"), located in Tulsa, Oklahoma.[2] [Doc. No. 1-1 ¶ 18]. In February of 2014, Global Healthcare REIT purchased Southern Hills from Defendant Wagner, and Plaintiff became the manager of the facility. [Id.].

Plaintiff alleges in the Complaint that Defendants SH CCRC and Wagner continued to receive payments after the sale of Southern Hills for services Plaintiff performed. [Id. ¶ 23]. Further, Plaintiff alleges that Defendants SH CCRC and Wagner acknowledged this debt, as evidenced by Defendant Sovran wiring money to Plaintiff's account on behalf of Defendants SH CCRC and Wagner on two separate occasions. [Id. ¶¶ 25-27]. Since then, Defendants SH CCRC and Wagner have allegedly fallen behind on payments. [Id. ¶ 28]. Plaintiff filed suit in Fulton County Superior Court on November 13, 2015 seeking at least $293,084.44 in damages. [Id. ¶ 31]. Because complete diversity exists between the parties and because Plaintiff's allegations meet the amount in controversy

---

[2] The Court notes that Defendants SH CCRC and Wagner refer to the purchasing company by the name "Southern Tulsa, LLC," in their Motion to Dismiss or Transfer [Doc. No. 3].

2

requirement, Defendants successfully removed the case to this Court. [Doc. No. 1 ¶¶ 3-9].

Plaintiff's Complaint asserts the following claims: breach of contract (Count One); quantum meruit (Count Two); quasi contract (Count Three); unjust enrichment (Count Four); and breach of trust/breach of fiduciary duty (Count Five). [Doc. No. 1-1 ¶¶ 36-68]. Defendants SH CCRC and Wagner now seek to dismiss each of those claims for lack of personal jurisdiction and venue. [Doc. No. 3]. Alternatively, Defendants SH CCRC and Wagner move to transfer this case pursuant to 28 U.S.C. § 1404(a) to the Northern District of Oklahoma. [Id.]. Defendant Sovran separately seeks dismissal of each of those claims for improper venue, or transfer pursuant to 28 U.S.C. § 1404(a) to the Northern District of Oklahoma. [Doc. No. 4]. The Court will analyze each of Defendants' contentions, in turn.

## II.  Personal Jurisdiction

The Court agrees with Defendants SH CCRC and Wagner that personal jurisdiction is improper in Georgia because even though the state long-arm statute extends to Defendants, they do not have sufficient minimum contacts to satisfy the

3

constitutional standard.[3]

A.   Legal Standard

When a federal court sits in diversity, it properly may exercise personal jurisdiction over the defendant "only if two requirements are met: (1) the state long-arm statute, and (2) the Due Process Clause of the Fourteenth Amendment." Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 (11th Cir. 1999) (citing Sculptchair, Inc. V. Century Arts, Ltd., 94 F. 3d 623, 626 (11th Cir. 1996)).  Thus, the Court uses a "two-step inquiry in determining whether the exercise of personal jurisdiction over a non-resident defendant is proper." Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009) (citing Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A., 421 F.3d 1162, 1166 (11th Cir.2005)).

First, courts must consider whether the exercise of personal jurisdiction over the defendant would comport with Georgia's long-arm statute. Id.  If so, courts then consider whether the defendant has sufficient minimum contacts with the state such that the exercise of jurisdiction would not offend Due Process

---

[3] As Plaintiff notes in its Response, [Doc. No. 7] by failing to raise a 12(b)(2) motion to dismiss for lack of personal jurisdiction, Defendant Sovran is deemed to have consented to personal jurisdiction in Georgia. Therefore, the Court does not address its jurisdiction over Defendant Sovran in this section.

notions of "fair play and substantial justice." Id. (citation omitted). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient *facts* to make out a prima facie case of jurisdiction." Scutieri v. Chambers, 386 F. App'x 951, 956 (11th Cir. 2010) (quoting United Techs. Corp. V. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009) (emphasis in original)). The court construes the allegations in the complaint as true, to the extent they are uncontroverted by the defendants' affidavits or deposition testimony. Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988) (citing Delong v. Washington Mills, 840 F.2d 843, 845 (11th Cir.1988)).  Where the evidence presented by the parties conflicts, the court construes all reasonable inferences in favor of the non-movant plaintiff. Id.

B.   Georgia Long Arm Statute

Under the Georgia long-arm statute,

> "A court of this state may exercise personal jurisdiction over any nonresident . . . in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state;
>
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from

AO 72A
(Rev.8/82)

the act;

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state. . .

O.C.G.A. § 9-10-91(1). This provision grants personal jurisdiction to the maximum extent permitted by procedural due process, without regard to whether the Defendant is physically present in Georgia. <u>Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa</u>, 620 S.E.2d 352, 355-56 (Ga. 2005). As a basis for personal jurisdiction, Plaintiff makes two arguments: (1) Defendants committed torts in Georgia; and (2) Defendants transacted business in Georgia. [Doc. No. 7]. The Court first considers Plaintiff's argument that Defendants transacted business in Georgia.

"'[T]ransacts any business' requires that the nonresident defendant has purposefully done some act or consummated some transaction in Georgia." <u>Diamond Crystal</u>, 593 F.3d 1249, 1264 (11th Cir. 2010). Courts thus consider both a nonresident's tangible and intangible conduct, such as "mail, telephone calls, and other 'intangible' acts"—even if they occurred outside of Georgia—to determine "whether it can fairly be said that the nonresident has transacted any

6

business within Georgia." Id. see also id. at 1264 n.18 (finding "instructive the literal definition of the words in the statute" and providing the definitions of transact, any and business from Webster's Third New International Dictionary (1993)); Lima Delta Co. v. Global Aerospace, Inc., 752 S.E.2d 135, 139-40 (Ga. Ct. App. 2013) (noting that post-Innovative Clinical long-arm jurisdiction may be "based on business conducted by the defendant or its agent 'through postal, telephonic, and Internet contacts'" (quoting ATCO Sign & Lighting Co. v. Stamm Mfg. Inc., 680 S.E.2d 571, 576 (Ga. Ct. App. 2009))).

The Supreme Court of Georgia has held that the "transacts any business" prong of the Georgia long-arm statute is to be literally construed. Innovative Clinical, 620 S.E.2d 352, 355 (Ga. 2005). All that is required is that the defendant "has purposefully done some act or consummated some transaction in Georgia," and the defendant "need not physically enter the state." Diamond Crystal, 593 F.3d at 1264. (quoting Aero Toy Store, L.L.C. v. Grieves, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006) and citing Innovative Clinical, 620 S.E.2d at 355-56).

Although the court in Innovative Clinical adopted a literal interpretation of "transacts any business," it also acknowledged that such a construction "would expand the personal jurisdiction of Georgia courts beyond that permitted by

7

constitutional due process." 620 S.E.2d at 355. Therefore, it held that courts must construe that prong of the long arm statute "as reaching only 'to the maximum extent permitted by procedural due process.'" Id. (quoting Coe & Payne Co. v. Wood-Mosaic Corp., 195 S.E.2d 399, 401 (Ga. 1973)).

Here, Plaintiff has met this low burden of the long arm statute with its uncontroverted allegations that Defendants intangibly transacted business in Georgia through sending emails, payments, and telephone calls to Plaintiff. Therefore, the Court finds that the exercise of personal jurisdiction over Defendants SH CCRC and Wagner comports with the "transacts any business" provision of the long-arm statute. Because the Court finds that this provision of the long-arm statute is satisfied, Plaintiff's arguments regarding Defendants' tortious behavior will not be addressed.

C.   Due Process

Even though exercise of personal jurisdiction comports with the long-arm statute, the Court concludes that exercise of personal jurisdiction would be inconsistent with the Due Process Clause of the Fourteenth Amendment. Under the Constitution, courts have developed two forms of personal jurisdiction, general and specific.  Although Plaintiff does not specify which form of personal

AO 72A
(Rev.8/82)

jurisdiction it asserts, Defendants maintain that their contacts with the forum state are insufficient to establish either general or specific personal jurisdiction.[4] The Court agrees.

### 1. *General Jurisdiction*

General jurisdiction exists when the defendant's contacts with the forum are so extensive that the forum state has the authority to exercise jurisdiction over the defendant even in matters unrelated to the defendant's contacts. Goodyear Dunlop Tires Operations. S.A. v. Brown, 564 U.S. 915, 924 (2011). "A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." Id., at 919 (citing International Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)). Defendants argue that they are neither domiciled in Georgia nor do they have the extensive contacts with Georgia necessary to confer general personal jurisdiction. [Doc. No. 3 at 7]. It is uncontested that Defendant SH CCRC "is a Virginia

---

[4] The Court notes that Plaintiff has focused its response on the Georgia long-arm statute analysis and has failed to provide any consideration of Due Process. Therefore, the Court will do its best to construe Plaintiff's arguments in the context of a constitutional analysis.

9

limited liability company with [its] principal place of business [in]...Florida." [Doc. No. 1-1 ¶ 3]. It is also uncontested that Defendant Wagner is an individual residing in Naples, Florida. [Id. ¶ 5]. In response, Plaintiff does not address general or specific personal jurisdiction. Rather, Plaintiff focuses on various provisions of the Georgia long-arm statute. [Doc. No. 7 at 4-10]. Plaintiff does not present evidence that either defendant comes close to having the necessary contacts with Georgia to satisfy the Supreme Court's "continuous and systematic" test. Therefore, the Court concludes that it lacks general jurisdiction over these defendants.

### 2. *Specific Personal Jurisdiction*

When determining whether specific jurisdiction exists, a court must determine whether the "controversy is related to or 'arises out of' a defendant's contacts with the forum . . . ." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 at 414 (1984) (citing Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). If the alleged contacts did arise in connection with the controversy, the defendant must still have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe, 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

10

"The 'minimum contacts' required to confer personal jurisdiction over a nonresident may not be merely 'random,' 'fortuitous,' or 'attenuated.'" Home Depot Supply, Inc. v. Hunter Mgmt. LLC, 656 S.E.2d 898, 901 (Ga. Ct. App. 2008) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). On the contrary, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe, 326 U.S. at 319).

With regard to specific jurisdiction, Defendants argue that Plaintiff has not met its burden of establishing evidence of personal jurisdiction over them because "there are no... factors showing that these Defendants are 'regularly doing or soliciting business, or deriving substantial revenue from goods or services, in this state.'" [Doc. No. 3 at 8]. Although Plaintiff does not address Defendants' specific jurisdiction argument directly in its Response, liberally construed, the Court interprets Plaintiff's argument to be that Defendants have sufficient contacts with Georgia through the commission of torts that affected Plaintiff in Georgia, and intangible contacts, such as sending regular emails, and occasional payments to Plaintiff in Georgia.

11

In order to bring suit against Defendant SH CCRC or Defendant Wagner in Georgia, Plaintiff bears the burden of proof that each Defendant purposefully directed its activities toward residents of the forum state or otherwise established contacts with the forum state. See Burger King, 471 U.S. at 472.  Plaintiff also must show that the cause of action arises out of or results from each defendant's forum-related contacts. Id.  In the present case, Plaintiff contends in its response that Defendants have the following contacts that relate to this controversy: (1) "[Defendants] were on notice that they may be in litigation in Georgia" [Doc. No. 7 at 3]; (2) "communications relevant to this case were initiated from Georgia" [Id. at 1]; (3) "Defendants knowingly and purposefully corresponded frequently with Plaintiff in Georgia" [Id. at 3]; (4) Defendants intangibly contacted Plaintiff in Georgia through frequent emails, bank payments, telephone calls [Id. at 7-8]; and (5) "torts were committed [in Georgia] by all Defendants." [Id. at 7].[5]  Because neither party argues these contacts do not relate to the controversy at issue, the

---

[5] Plaintiff also asserts that personal jurisdiction is proper for Defendant Wagner because he "owns an interest in an entity that has operated for years, an assisted living home in Cordele, Georgia." [Doc. No. 7 at 8].  Yet, Plaintiff incorrectly relies on the Georgia long-arm statute to support this assertion without considering the constitutional prong of the analysis. Additionally, the contact is unrelated to the suit and therefore cannot suffice for specific jurisdiction.

12

Court will now consider whether these contacts demonstrate that each Defendant purposefully directed its activities toward residents of the forum state.

The "purposeful availment" element requires that each nonresident defendant must have purposefully directed its activities at forum residents, or purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of local law. Hanson, 357 U.S. at 253-254.  The requirement assures that a nonresident will be aware that it is subject to suit in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  Plaintiff states that Defendants were on notice that they could be sued in Georgia. [Doc. No. 7 at 3].  Yet, Plaintiff provides no support for this conclusory statement.

Further, the fact that Defendants knew Plaintiff is a Georgia resident is not alone sufficient to establish personal jurisdiction. Rather, "the relationship must arise out of contacts that the 'defendant himself' creates with the forum state." Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014) (quoting Burger King, 471 US at 475). In Walden, the Supreme Court held that Nevada lacked personal jurisdiction over the defendant, despite the fact his conduct was "purposely aimed' at plaintiffs who were Nevada residents who would receive "foreseeable harm" in Nevada. Id.

13

at 1120.

Even if Defendants solicited the contract knowing that Plaintiff was a Georgia corporation, that knowledge cannot create sufficient minimum contacts with Georgia because "the plaintiff cannot be the only link between the defendant and the forum." Id. at 1118. To find otherwise would "improperly attribute[ ] a plaintiff's forum connections to the defendant and make[ ] those connections decisive in the jurisdictional analysis." Id. at 1125 (internal quotation marks omitted). As for Defendants' alleged forum contacts, Defendants directed some emails, payments, and phone calls to Plaintiff in Georgia, but this activity alone is insufficient to establish personal jurisdiction. See Burger King, 471 U.S. at 474-75; see also General Electric Credit Corp. v. Scott's Furniture Warehouse Showroom, Inc., 699 F. Supp. 907, 913 (N.D. Ga. 1988) ("a substantial body of case law indicating that the agreement to mail payment checks into a forum state does not weigh heavily in the calculus of contacts.").

Indeed, these isolated connections are just the sort of random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction. See Burger King, 471 U.S. at 475. The emails, payments, and phone calls here do not create a "substantial connection" to Georgia sufficient to subject Defendants

14

to personal jurisdiction in this state. See id. Instead, Defendants' contacts with Geogia were merely incidental and did "not constitute a deliberate and substantial connection with the state such that [Defendants] could reasonably anticipate being haled into court [ ]here." Burger King, 471 U.S. at 474-75. Therefore, communications relevant to this case that were initiated from Georgia, correspondence with Plaintiff in Georgia, and Defendants intangible contacts with Plaintiff in Georgia through frequent emails, bank payments, and telephone calls are insufficient, alone or combined, to establish personal jurisdiction.

It is evident that Defendants did not purposefully direct their activities to Georgia in any way. Defendant SH CCRC does not have any corporate records in Georgia, is not authorized to do business in Georgia, does not have offices, employees, real property, or telephone listings in Georgia, and does not have a registered agent in Georgia. [Doc. No. 3 ¶¶ 7-10]. Defendant Wagner does not maintain any real property, offices, or accounts in Georgia, relating to this suit. [Id. ¶ 16].

The Court finds that any contact Defendants had with Georgia was merely incidental to the negotiations and execution of the contract in controversy. Further, even if Plaintiff had met its burden, exercise of personal jurisdiction

15

would still fail under the second prong of the constitutional analysis, "fair play and substantial justice." Ultimately, the Court finds that Plaintiff has not demonstrated that Defendants purposefully directed actions toward Georgia, beyond mere incidental contracts with the Plaintiff who happens to reside here. As a result of this, Defendants were not properly on notice that they could be sued in Georgia and therefore did not have the ability to take precautions against suit here.  It would offend traditional notions of fair play and substantial justice to subject Defendants to suit in Georgia. Therefore, Defendant SH CCRC and Defendant Wagner's Combined Motion to Dismiss Plaintiff's claims for lack of personal jurisdiction is **GRANTED**.

## III.   Venue

Defendant Sovran has moved to dismiss this case for improper venue under Federal Rule of Civil Procedure 12(b)(3).  In the alternative, Defendant Sovran requested that we transfer the case to the Northern District of Oklahoma pursuant to 28 U.S.C. § 1404(a).  Plaintiff has met its burden to establish venue as to Defendant Sovran.[6]  Therefore, the only remaining issue is whether transfer is

---

[6] For venue purposes, a corporate defendant is a resident of "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Therefore, because this

proper to the Northern District of Oklahoma.

A.  Legal Standard

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference." In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) (citations omitted). "Thus, in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient." Id.

In determining whether a transfer is appropriate under § 1404(a), or alternatively, a court may consider a variety of factors, including: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's

---

court has personal jurisdiction over Defendant Sovran, venue is also proper.

choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.  Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005).  Since the touchstone of forum non conveniens analysis is convenience, controlling weight cannot be given to any one factor in the balancing process or the doctrine would lose much of the flexibility that is its essence.

    B.    Analysis

In the instant case, Defendant Sovran argues that because the dispute is over a facility located in Oklahoma and witnesses reside in Oklahoma, this case should be transferred to the Northern District of Oklahoma. [Doc. No. 3 at 10-17].  In response, Plaintiff argues that venue in Georgia is proper because Plaintiff's choice of forum should be given significant weight and great deference, witnesses are located here, and Georgia is closer to Florida, Defendant Sovran's state of domicile. [Doc. No. 7 at 10-12].

The Court concludes that virtually none of the § 1404(a) factors weigh in favor of transferring this case to the Northern District of Oklahoma. The contract at issue was substantially negotiated in Florida, and Defendant Sovran is domiciled there.  Plaintiff correctly points out that no parties are organized in or reside in Oklahoma. [Id. at 11].  As such, traveling to Oklahoma for litigation would be arguably less convenient for the parties than Georgia. Further, taking as

18

true Plaintiff's assertion that at least seven potential witnesses live in Georgia, Oklahoma would be an equally inconvenient forum for them as it would for the Oklahoma witnesses to travel to Georgia. The only connection this case has to Oklahoma is the physical location of the facility that is in controversy. Ultimately, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). Defendant Sovran has not convinced the Court that the Northern District of Oklahoma is a more convenient forum than Georgia for this case. Therefore, Defendant Sovran's Motion [Doc. No. 4] is **DENIED**.

### IV. Conclusion

In accordance with the foregoing, Defendants SH CCRC and Wagner's Combined Motion to Dismiss or Transfer Venue [Doc. No. 3] is **GRANTED in part and DENIED in part**. Defendants' Motion is **GRANTED** as to dismissal for lack of personal jurisdiction. The Motion to Transfer Venue is **DENIED, as moot**. Defendant Sovran's Motion to Dismiss or Transfer Venue [Doc. No. 4] is **DENIED**. The remaining parties are **ORDERED** to file a Joint Preliminary Report within fourteen days.

**SO ORDERED**, this 17th day of August, 2016.

_____
**RICHARD W. STORY**
United States District Judge

19